## STATE *v.* JAMES CALL.

When the false pretences consist in words used by the respondent it is sufficient to set them out in the indictment as they were uttered, without undertaking to explain their meaning.

Upon an indictment for obtaining goods by falsely pretending that the buyer owed but little, and had ample means to pay all his debts, and that his note for $250 was good, it is competent for the State to prove that within three days after he mortgaged the greater part of his personal property to another, as bearing upon his intent in making such representations.

Indictment, alleging that the respondent, at Newport, January 14, 1867, " devising and intending to cheat and defraud one Lucius W. Darling of his goods, moneys, chattels, and property, unlawfully, know-

ingly aud designedly, did falsely pretend to the said Darling that he, the said James Call, was owing but a little; that he was owing Shepard Cutting for a pair of oxen and was not owing any other large debt; that the sale of his wood and bark, that he the said Call then owned, would more than pay all he owed, and that his note for two hundred and fifty dollars was good; whereas in truth and fact he was then owing large amounts; he was then owing other large debts in addition to what he was then owing Shepard Cutting for a pair of oxen, and the sale of his wood and bark which he then owned would not more than pay for all he then owed, and his note for two hundred and fifty dollars was not° then good, as he, the said James Call, then and there well knew; by color and means of which said false pretense and pretences, he, the said James Call, did then and there unlawfully, knowingly, and designedly obtain from the said Lucius W. Darling one pair of oxen, being then and there the property of the said Darling, of the value of two hundred and fifty dollars, with intent to cheat and defraud the said Darling, to the great damage of the said Darling, contrary to the form of the statute," &c., &c.

The respondent moved to quash the indictment for reasons substantially as follows:

1. Because the indictment is uncertain and insufficient in this, to wit, that it alleges that said James Call falsely pretended to said Darling that he, said Call, was owing but little.

2. Because said indictment is uncertain and insufficient in this, to wit, that it alleges that said Call represented to said Darling that he, said Call, besides the debt to Shepard Cutting, was owing no other large debt.

3. Because said indictment alleges that said Call represented to said Darling that his, said Call's, note for two hundred and fifty dollars was good, without showing in what sense said representation was made, and whether by the term good was meant valid in law, or valuable and an available security for that sum.

4. Because said indictment does not show with sufficient legal certainty that said Call was owing large debts, and does not sufficiently negative and show false the representations made by said Call, as alleged in said indictment.

The court overruled the motion to quash, and the respondent excepted.

The condition of a mortgage of personal property executed by the respondent, January 17, 1867, to his father, was read to the jury, without objection, as tending to show respondent's indebtedness. The counsel for the State were then permitted, against respondent's objection, to put in evidence the entire mortgage, as bearing on the question of the respondent's intent in making the representations to Darling on the 14th of January, but for no other purpose. The mortgage, which may be referred to as part of this case, conveyed the greater portion of the respondent's personal property, including the oxen purchased of Darling.

To the admission of this evidence the respondent excepted. Before this evidence was admitted, Darling had testified for the State, that at

the time of the trade with the respondent, he (Darling) told the respondent that he wanted the cattle should remain his property until paid for by the respondent, as he was not acquainted with the respondent's circumstances; but that the respondent objected to this, making representations as to his pecuniary condition, and saying that he had once bought a yoke of cattle in the way that Darling proposed, and that he then said he would never buy any more property in that way; and the respondent was allowed to take the oxen, giving Darling his note for the price.

It appeared in evidence that at a time in February, 1867, which the jury might have found to be subsequent to the 18th, the respondent said he had mortgaged everything he had. The court, against respondent's objection, allowed the State to read to the jury "the description" in a personal mortgage executed by the respondent Feb. 18th, 1867, as having a tendency, in connection with the foregoing evidence, to show what proportion of the respondent's property was included in the first mortgage of Jan. 17th, 1867, but for no other purpose.

To the admission of this evidence the respondent excepted.

Darling testified that the respondent, during the conversation above referred to, made the first three representations alleged in the indictment, and that he then said to the respondent: "If what you say is true, your note is good for two hundred and fifty dollars," to which the respondent replied that it was. The court told the jury, in substance, that this representation was not true, unless the respondent's note was a valuable or available security for the sum of two hundred and fifty dollars.

To this the respondent excepted.

(The jury were instructed in reference to all the representations, that the State must prove that the respondent knew them to be untrue when he made them.)

The jury having returned a verdict of "guilty," the respondent moves to set aside the verdict for error in the foregoing rulings. The respondent also moves in arrest of judgment because of the insufficiency of the indictment.

Ordered, that the questions of law arising on the foregoing case be reserved, and assigned to the law term.

*Wait,* for respondent.

I.  1.  The indictment alleges that the defendant "pretended" that he was "owing but a little," and that, besides the debt to Shepard Cutting for a pair of oxen, he "was not owing any other large debt." The terms "little" and "large debt," here used, are relative terms, and wholly uncertain, and there being nothing in the indictment to fix their meaning, or to give them precision, the indictment is insufficient.

A debt might be justly deemed small when spoken of with reference to one man or given state of circumstances, and the same debt fairly regarded as large if spoken of in reference to another man or another state of circumstances.

The amount which Darling, (the prosecutor,) had in his mind as a "little" or "large debt," and what he supposed the defendant was speaking of as such, might not have been in the mind of the defendant at all. The defendant being accustomed to transactions of considerable amount, might have honestly regarded his indebtedness as not large, and have been entirely sincere in the manner in which he spoke of it, whereas Darling, being accustomed to transactions of the same magnitude might have esteemed the same indebtedness enormously large. Hence there might have been an entire misunderstanding between the parties, and both have been equally honest. The same may be the case with different juries impannelled for the trial of a cause; and the law cannot fix the meaning of the terms. There ought, therefore, to be no conviction upon an indictment thus indefinite.

2. The negation of the pretences by the indictment is made in terms equally uncertain and indefinite. There is no sum which the court can direct the jury is by law to be regarded as a "large debt," or any amount which, if not proved to be owing, the indictment would not be sustained. The indictment does not, therefore, enable the defendant to know what he is to defend. It is, therefore, uncertain and insufficient.

II. The term "good," as applied to commercial paper, is used in two distinct and radically different senses. In one sense its signification is valid in law, in the other it signifies a *valuable* or *available* security. Webster's Dictionary, Good.

The first signification is, that the maker or drawer is a person capable of drawing a valid note or bill, that he is not a minor or under guardianship, or in any such situation as to render a note drawn by him invalid, &c. The other, that he is *solvent* and *able to pay* such a note. A note may be perfectly "good" in the first sense, and not "good" in the other. If the defendant had in his mind the first signification of the word, there was no falsehood in his representation, notwithstanding Darling might have understood him in the other sense. The indictment should have shown in which sense the term was used, so that the defendant might know what he was to defend. It should also have shown in which sense the defendant's note was not good. This not being shown, the indictment is uncertain and bad.

For the above reasons, it is submitted that the motion to quash the indictment ought to have been granted. But, having been denied, the judgment ought, for the same reasons, to be arrested.

III. The mortgages admitted in evidence had no legitimate legal tendency to prove the facts for which they were offered. The verdict ought, therefore, to be set aside.

*Attorney General,* for the State.

I. Though the false pretences must be specifically stated, it seems to be clear that no greater certainty or precision can be required than to state them truly, as they were described to the party at the time he was

imposed upon.   2 East's P. C. c. 18, sec. 13, p. 837, 838; Wharton's Precedents, 528, note "d;" Wharton's Cr. Law, sec. 2148.

Thus, in a case where an objection was taken, that the wager therein mentioned was stated to have been made with a colonel in the army, then at Bath, without setting out his name, or any other special designation of him, the objection was overruled; the court considering the charge to be as certain as the nature of the thing would admit, the name of the colonel not being, perhaps, mentioned at the time the defendant spoke of the pretended wager.   *Rex* v. *Young*, 3 Term Rep. 98; 2 East. P. C. ch. 13, sec. 8, p. 828.

Thus, too, we have the following precedents of indictments, pertinent to this case:   "Pretend to the said E. F. that the said C. D. then was a merchant of *great property*, who wanted to purchase horses in order to export and send them abroad," &c.   "Whereas, in truth and in fact, the said C. D. was not then a merchant of *great property* who wanted to purchase horses in order to send them abroad," &c.   Davis' Precedents, 94.

"Did falsely pretend to the said W. F., that he, the said A. G. D., had paid off every dollar of the old score that he owed in Philadelphia, that he was *well off*, and that he was *very rich*, and had a *great deal of property* in Kentucky.   Whereas, in truth and fact, he, the said A. G. D., had not paid off every dollar of the old score that he owed in Philadelphia, and was *not well off*, and was *not very rich*, but on the contrary *was very poor*, and did not own a *great deal of property* in Kentucky," &c.   Wharton's Precedents, sec. 552.

II.   "An indictment is nothing else but a plain, brief, and certain narrative of an offence committed by any person, and of those necessary circumstances that concur to ascertain the fact and its nature."   2 Hale's P. C. 169.

"Common sense," said Chief Justice Parker, "is not to be deemed a stranger to legal process, but as very influential in ascertaining the force and effect of words and sentences, which, although technical, are to receive a sensible construction."   *Com.* v. *Runnels*, 10 Mass. 518.

The words "little" and "large" are relative terms, and, in the indictment under consideration, have relation to the value of a yoke of oxen, to the sum of $250, the amount of the note.

The word "good," standing alone, does not answer to any one of the *forty* definitions given by Webster.   It was used as a title among the first settlers of New England, instead of Mr.; as *Goodman* Jones; but whether it has that signification depends upon its connection with other words.

In the indictment, all the pretences had manifest reference to the ability of the respondent to pay a note for $250, and it was in respect to this ability that he said his note for that sum was good.

When a "flash note" is imposed upon a party by false pretences, then the term "valid" is used in the precedents of indictments.   But here no question was made as to the validity of a note not then in existence.

III.  *The intent to defraud must be proved.*  How?  "Fraud is almost always a matter of inference from circumstances.  Direct proof of it can seldom be expected.  Concealment and disguise are often essential ingredients in it.  It consists in intention, which, if nefarious, will not be avowed.  Still it must be proved ; and the question is, How shall it be proved?  The answer is, by circumstantial evidence.  A resort can be had to none other.  The demeanor of the party implicated, the nature, tendency, and effect of his acts, are to be carefully examined.  A train of circumstances, sometimes more and sometimes less intimately connected with the fraudulent act to be proved, may be presented, from which inferences may be drawn as to the object and design of the accused."  *Ingersoll* v. *Barker*, 21 Maine 474.

Evidence that the defendant was deeply insolvent at the time of making the false representations relied on, is competent against him for the purpose of showing his intent.  *Com.* v. *Jeffries*, 7 Allen 548.

All the valuable part of the respondent's personal property, as is evident from an inspection of the mortgage, including the same oxen he obtained of Darling, were, directly after he made the false pretences set forth in the indictment, mortgaged to his father ; a fact of itself, unexplained, perhaps conclusive evidence of fraud ; certainly a fact for the consideration of the jury.

IV.  But there need be only one false pretence ; and, though several such pretences are set out in an indictment, yet, if any one of them is proved, being such as truly amounts in law to a false pretence, the indictment is sustained.  2 Bishop Cr. Law, sec. 347 ; *State* v. *Dunlap*, 24 Maine 77 ; *State* v. *Mills*, 17 Maine 211.

BELLOWS, J.  The objections are mainly to the sufficiency of the indictment, but it is not contended that the representations, if untrue, would not come within the legal definition of false pretences.  The question, then, is, whether the offence is sufficiently described.

On that point it is laid down in 2 East's Pleas of the Crown, 837, that it does not appear necessary to describe the false pretences more particularly than they were shown or described by the party at the time, and in consequence of which he was imposed upon.  So is Wharton's Cr. Law 640.  In *Rex* v. *Young & al.*, 3 T. R. 98, one count stated the false pretences to be that Young had made a bet of £500 with a colonel in the army at Bath, without disclosing his name, and it was held well, *Buller, J.*, saying that in this stage of the proceeding the court must take it that the representation by the defendants was made in the same manner that it is charged in the indictment.  And if that, though general, was sufficient to answer the defendants' purpose, we cannot say that it was too general.  We are not to suppose that the colonel's name was mentioned ; and the prosecutor could not state it with greater particularity than the defendant used.

From these authorities as well as upon principle it is clear that where the false pretences consist in words used by the respondent it is sufficient to set them out in the indictment as they were uttered, without un-

dertaking to explain their meaning. It is held even that it is not necessary to make any express allegation that the facts set forth show a false token or false pretence. 2 East's P. C. 838; *Tenny's Case,* Cro. Car. 564.

In the case before us the false pretences are that defendant represented that he was owing but little, that he was owing Shepard Cutting for a pair of oxen, and was not owing any other large debt; that the sale of his wood and bark that he then owned would more than pay all he owed, and that his note for $250 was good.

These representations, if false, very clearly come within the meaning of the term *false pretences,* notwithstanding no precise amount of indebtedness is stated, and although the terms "little" and "large" are uncertain; yet the court can see that such representations were well calculated to inspire confidence in respondent's ability to pay, and to induce the seller to give him credit.

In deciding what was meant by the representations that respondent owed but little, and no large debts but the debt to Cutting for a pair of oxen, the jury would consider the purpose of the representations, namely, to obtain credit for the price of a pair of oxen, the fact that he spoke of his debt to Cutting as a large one, and other circumstances tending to give some idea of the meaning of these terms; and it would be for them to determine whether upon the whole evidence the respondent owed but little, and no large debt but the one to Cutting, or in other words whether the representations were true or false. If false, it clearly could be no answer to say that the respondent did not undertake to fix with certainty the amount of his indebtedness. Neither is it an objection to the indictment that it does not fix the amount, but leaves it just where the respondent did; but it is enough that the iudictment sets out the words used, and that the court can see that they constitute an offence within the statute.

In accordance with these views are the precedents, where the false pretence was that one of the respondents was a merchant of great fortune; and in another case where the prisoner represented that the person upon whom he had drawn for £31, was a gentleman of fortune residing at H., when in fact he was a pauper. 3 Chitty's Cr. Law 768 and 772.

The mortgage of the greater part of the respondent's personal property three days after the sale of the oxen was admissible as bearing on the question of respondent's intent in making the representations complained of, and the subsequent mortgage of the 18th of January might well be received to show with other evidence what proportion of his property was included in the first mortgage.

Had the respondent, immediately on obtaining these oxen, mortgaged them with the bulk of his other personal property to another person, it could not fail to have a legitimate and important bearing on the question of intent, and the doing it three days after might be hardly less significant, unless there had been some change of circumstances to cause it; and this would be for the jury to consider.

If the purpose to cheat the seller of the oxen existed in the mind of the respondent when he made these representations, we should naturally

expect that he would place the oxen and other property out of the seller's reach, and the fact of doing so soon after might properly be submitted to the jury.    In *Com.* v. *Jeffries*, 7 Allen 569, it was held that evidence that defendant was insolvent might be received in such a case as this on the question of intent.

The defendant also excepts that the indictment is not sufficient in alleging that he represented that his note for $250 was good, without showing in what sense the representation was made; and whether by the term *good* was meant valid in law, or a valuable and an available security.    We think, however, for the reasons before assigned, it is sufficient to set out the words actually used.

In respect to the form of the indictment on this point, it will be found that it conforms to precedents, as in 3 Ch. Cr. Law 774, where the charge was for obtaining money on the false pretense that a certain paper was a good and negotiable promissory note, and security for the payment of five guineas.

The objection to the charge of the judge as to the meaning of the representation that defendant's note for $250 was good, is properly not insisted upon in the argument.

With these views there must be

*Judgment on the verdict.*